UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| CARMELA RENNE JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 11-0048-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Carmela Renne Jackson ("Jackson" or "claimant") and Defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner"). [Record Nos. 10, 11] Jackson argues that the Administrative Law Judge ("ALJ") assigned to her case erred by failing to adequately explain his reasons for discounting her credibility and complaints of disabling pain. Further, she contends that the ALJ erred by stating that he intended to rely on a specific psychological evaluation performed by a state agency consultant, but then failed to include the mental restrictions found by the psychologist in presenting hypothetical questions to the vocational expert ("VE"). As a result, Jackson seeks a remand for further proceedings. However, the Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed.

After reviewing the administrative record and the parties' briefs, the Court will deny the relief sought by Jackson. The Court concludes that the ALJ fully explained his reasons for giving limited credibility to Jackson's complaints of disabling pain. Additionally, the ALJ fully incorporated all relevant physical and mental impairments into the hypothetical questions presented to the VE. Contrary to Jackson's argument, the ALJ did not state that he intended fully incorporate Dr. Sahner's conclusions into his findings regarding her residual functional capacity ("RFC"). The Commissioner's motion for summary judgment will be granted because substantial evidence supports his decision that Jackson is not disabled under the Social Security Act but is capable of performing work even with the functional limitations attributed to her by the ALJ.

**I.**

Jackson filed an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act on November 19, 2007. [Tr., p. 78] Although she also filed an application for Disability Insurance Benefits under Title II of the Act, that claim was waived after she amended her alleged onset date. [Tr., pp. 28-29; Record No. 10-1, fn. 1] Jackson alleged disability beginning November 19, 2007. Her applications were denied initially and upon reconsideration. Thereafter, a request for hearing before an ALJ was timely filed. Jackson, her non-attorney representative, and VE James H. Miller, appeared before ALJ Frank Letchworth on September 2, 2009, for an administrative hearing. [Tr., pp. 23-53] In a hearing decision dated December 7, 2009, ALJ Letchworth found that Jackson

was not entitled to SSI because she was not disabled under section 1614(a)(3)(A) of the Social Security Act. [Tr., pp. 9-17]

Jackson was thirty-seven years old at the time of the administrative hearing. She has a limited education, having attended high school through the eleventh grade. [Tr., p. 27] She has work experience as a custodian. [Tr., p. 50] Jackson alleges that she is disabled due to a variety of conditions including hypertension, back and neck pain associated with degenerative disc and joint conditions of the lumbar and cervical spine, obesity, and depression. After reviewing the record and the testimony presented during the administrative hearing, the ALJ concluded that Jackson suffered from these conditions. However, he concluded that Jackson did not have an impairment, or a combination of impairments, that met or equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [Tr., pp. 11-13] Next, after considering the medical records and other relevant evidence, ALJ Letchworth determined that Jackson's impairments did not prevent her from performing a limited range of light work. More specifically, the ALJ found that Jackson retained the residual functional capacity ("RFC"):

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she can perform no more than occasional climbing ramps/stairs, stooping, bending, crouching, and no crawling or climbing ladders/ropes/scaffolds or work around unprotected heights or hazards; she requires a sit stand option every 30 minutes; ***the claimant is precluded from any production rate or quota work.***

(Emphasis added.) [Tr., p. 13]

As a result of this assessment, the ALJ presented a number of hypothetical questions to the VE in an effort to determine whether there were jobs in the national and regional economies that Jackson would be able to perform. The VE responded affirmatively to the ALJ's questions. However, the VE indicated that, if Jackson's testimony was fully credited, there would not be any work she would be able to perform on a sustained basis.[1] After determining that Jackson's testimony conflicted with other objective medical evidence, the ALJ concluded that her allegations of disabling pain should not be fully credited. Thus, he denied Jackson's request for SSI. [Tr., p. 18]

**II.**

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007); *see also* 42 U.S.C. § 423(d)(1)(A). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir.

---

1 The following questions and answers appear at page 52 of the administrative transcript:

> Q. Thank you, Dr. Miller. Now, the last hypothetical, did you hear Ms. Jackson's testimony?
>
> A. Yes, sir.
>
> Q. We will now include all the limitations that she mentioned in her testimony today. Will this affect the answer to the prior hypothetical?
>
> A. Yes, sir. The claimant described high levels of pain and also indicated that she had to lie down several times a day in order to get relief from the pain. So, based on her testimony, there, there would not be any work that she could perform on a sustained basis.

2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)); *see also* 20 C.F.R. § 416.920(a)(4). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

First, the claimant must demonstrate that she is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 416.920(b). Second, the claimant must show that she suffers from a severe impairment or combination of impairments. 20 C.F.R. § 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 416.920(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's residual functional capacity and relevant past work to determine whether she can do past work. If she can, she is not disabled. 20 C.F.R. § 416.920(f).

Under the fifth step of the analysis, if the claimant's impairment prevents her from doing past work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether she can perform other work. If she cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Howard v. Comm'r of Soc. Sec.*,

276 F.3d 235, 238 (6th Cir. 2002) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion. *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Thus, the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

**III.**

Jackson asserts that the Commissioner's final decision regarding the denial of benefits should be remanded for further proceedings for two reasons. First, she contends that the ALJ erred by failing to adequately explain why he found that she was not fully credible regarding claims of disabling pain. [Record No. 10, pp. 6-8] Second, she argues that the ALJ did not include the mental restrictions identified by Dr. Sahner in the hypothetical questions presented to the VE. [Record No. 10, pp. 8-9] According to Jackson, this was error because the ALJ stated that he intended to rely on Dr. Sahner's opinions regarding the claimant's mental limitations. However, after considering the administrative record and the ALJ's rationale for the weight given to Jackson's testimony and Dr. Sahner's opinions, the Court finds both arguments unavailing.

**A.   The ALJ Properly Evaluated Jackson's Credibility And Complaints Of Pain.**

In general, a claimant's subjective complaints of pain may be sufficient to support a claim of disability. *See Glass v. Sec'y of Health Ed. and Welfare*, 517 F.2d 224, 225 (6th Cir. 1975). However, in evaluating the claimant's allegations, an ALJ should look to the medical evidence to determine if the complaints of pain have an objective basis inasmuch as reference to medical evidence is helpful in making credibility determinations concerning such claims. The ALJ's credibility determination is entitled to "great weight and deference" provided it is "reasonable and supported by substantial evidence in the record." *Jones*, 336 F.3d at 476.

To support a claim for Social Security benefits, there must be medical signs and

findings, established by medically acceptable or clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological or psychological abnormalities which could reasonably be expected to produce pain. 42 U.S.C. § 423(d)(5)(A). In addition, the Sixth Circuit has prescribed an analytical framework for evaluating subjective complaints of pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). Here, the ALJ's conclusion regarding Jackson's credibility and the effect of her complaints of pain is included in his finding concerning her RFC.

In the present case, ALJ Letchworth properly evaluated Jackson's complaints of pain and considered the entire record in concluding that, while her medically determinable impairments could reasonably be expected to cause pain, Jackson's statements regarding the intensity, persistence, and limiting effects of the pain from which she suffers are not credible *to the extent that the statements are inconsistent with his RFC finding.* In reaching this conclusion, the ALJ noted that Jackson alleged that she suffered from disabling pain in her neck, arms, back, hips, and legs due to an injury after a fall from her porch in August 1998. She claimed to have pain "most of the time" and "most all the day." She reported severe back pain while walking, standing, or sitting, as well as pain in her legs and hips if she sits

or lies for long periods of time.  Additionally, Jackson claimed to suffer from neck pain that caused her arms and shoulders to hurt.  In her pain questionnaire, Jackson reported pain while bending and lifting.  As noted in the ALJ's opinion,

> The claimant reported she changes positions frequently and testified her son helps her with grocery shopping "sometimes", which she does weekly, and helps her with chores.  She does laundry and folds the clothes, but cannot do chores for 2 or 3 days or she is "down for 2 or 3 days".  The claimant sits in a recliner when using the computer. . . .  The claimant testified she "hurts" when she gets up in the morning and is so fatigued, so she lies in the bed most of the day.  She lies on a heating pad and takes medication for the pain, she wore a "belt" before that did not help; she alleged sick stomach, dizziness, and sleeping medication side effects.  The claimant testified she does not get much exercise, she drive either her father's or her son's vehicle when she drives.  She missed nerve conduction studies in Lexington 2 or 3 times in the last 6 months and is scheduled to go back there for this.  The claimant testified she went one time for physical therapy; they put her on heat and she decided she could do this at home.

[Tr., p. 13]

ALJ Letchworth discussed Jackson's testimony regarding treatment provided by Dr. Lynn Fogleman, the claimant's primary care physician.  After addressing Jackson's testimony and treatment for hypertension and medical treatment for other medical issues, the ALJ summarized much of the evidence relating to the claimant's back and neck pain.

> The documentary evidence reflects a long history of treatment with medications for *intermittent* low back and neck pain with radiation more to the left leg and sometimes to the right leg.  The record reflects the claimant requested a referral to pain management because she was interested in [possibly] getting injections for her pain in 2007 (Exhibit 4F/11).  The claimant testified she had injections from Dr. Lynd a year and ½ or 2 years ago and saw no improvement in her pain, but stated she was thinking about trying the shots again.  She has been seeing Dr. John Gilbert for "about a year and ½ or 2 years" and sees Dr. Lingreen about every 3 months; Dr. Lingreen also ordered physical therapy for her neck and back pain [in] November 2007.

> Those records reflect the claimant did not keep her appointments with Dr. Lingreen consistently (Exhibit 3F). Similarly, Red Bird Clinic notes reflect minimal treatment in 2008, primarily for medication refills and transient conditions such as upper respiratory infection (Exhibits 2F, 13F, and 15F). The claimant stated Dr. Wheeler does not want to do surgery now at her age, but then stated Dr. Gilbert told her she needs surgery. . . . The claimant testified Dr. Gilbert does drug tests on her, which [she states] she has never failed, but Red Bird Clinic notes reflect there was a problem. Medical records submitted at the hearing level reflect August 2008 "non-negative" benzodiazepine results and December 2008 results showing "non-negative" Benzodiazepine, Oxycodone and opiate/morphine that were not prescribed to her, which casts doubt on her credibility. . . . [S]he missed 6 appointments between January 2009 and July 2009 (Exhibits 15F/8 and 18F/3, 5, 7, 12, and 15).

[Tr., p. 14-15]

The foregoing summary supports the conclusion that the claimant exaggerated the extent and nature of the pain she suffers as the result of her back and neck impairments. As ALJ Letchworth noted in his opinion:

> In terms of the claimant's alleged pain and physical limitations, the evidence does not demonstrate any objective source for *chronic disabling pain* (Exhibit 2E). Even her allegations reflect intermittent pain; she reported "sometimes she does housework all day" and "sometimes a few hours", grocery shops once a week, does laundry, cares for her two young sons, and prepares simple meals (Exhibit 4E). The claimant also reported she gets her children ready for school and on the school bus, interacts with them after school, and puts them in bed, which contradicts her claim that she is so fatigued that she lies in bed most of the day (Exhibits 2E, 4E, and 5E). While she may "rest more", wake up a lot while sleeping, and turn side to side as alleged, and may be unable to do yard work and things with her two sons she used to do, I am not persuaded the claimant has chronic disabling pain or limitations to the degree alleged. The claimant has maintained until recently on non-narcotic pain medication; Dr. Burchett noted a normal gate, no distress, and essentially normal examination findings of the hands, upper extremities, neck and low back. Tinel's sign was negative bilaterally and there was no evidence of spasm or crepitus. The only abnormal cervical related finding was diminished dynometric grip strength bilaterally, but normal grip with finger squeeze. Straight leg findings were

-10-

> inconsistent with positive on the left seated at 90 degrees and positive bilaterally supine at 90 degrees, similar to the end range findings at 2008 physical therapy. Considering normal ranges of motion, normal neurological findings, the ability to stand on one leg at a time, perform heel, toe, tandem gait and squat without difficulty, I see no medical evidence that warrants disability, but considering her obesity, hypertension, her activities of daily living, and testimony, I find a departure from the State agency finding of medium exertional ability is warranted. I find the claimant's combined physical conditions allow for light exertional activity of lifting 10 pounds frequently, 20 pounds occasionally. I find the aforesaid evidence warrants limitations of no more than occasional climbing ramps/stairs, stooping, bending, crouching, and no crawling or climbing ladders/ropes/scaffolds or work around unprotected heights or hazards. Giving the claimant the utmost credibility due, I find she requires a sit/stand option every 30 minutes. Greater physical limitations are not warranted.

[Tr., pp. 15-16] This quoted portion of the ALJ's opinion demonstrates that good reasons were given to discount Jackson's testimony regarding pain. Further, the objective medical evidence relied upon by ALJ Letchworth clearly supports his conclusion that the pain was intermittent, as opposed to chronic and disabling. In short, the medical evidence relating to the claimant's cervical and lumbar abnormalities does not support the degree of pain claimed by Jackson.

### B. The ALJ Properly Incorporated All Relevant Functional Limitations Into The Hypothetical Questions Presented To The Vocational Expert.

As support for his determination that depression constituted a severe impairment affecting Jackson, ALJ Letchworth noted that:

> The documentary evidence also reflects the claimant is treated for depression and testified her current psychotropic medication is Prozac, which was first prescribed 10 years ago (Exhibit 11E). Though the State agency determined the claimant had insufficient evidence regarding her depression prior to the date last insured and non severe thereafter, there is evidence of treatment for depression with Prozac. Considering the claimant's testimony and Dr.

-11-

> Sahner's consultative examination report, I am persuaded a departure from the State agency conclusion is warranted and find the claimant's depression has imposed more than minimal limitations on her ability to perform work related activity at all times relevant to this decision (Exhibit 2F, 4F, 7B, 8F, 9F, 10F, and 11F).

[Tr., p. 11] Thus, a plain reading of this portion of the ALJ's opinion does not support the assertion that he fully incorporated Dr. Sahner's report into his opinion. Instead, he found that the report supported his decision to depart from the State agency's conclusion regarding the functional limitations imposed on Jackson as a result of her depression. However, based on the evidence presented,[2] the ALJ determined that Jackson's depression did not meet or equal the criteria of listing 12.04. [Tr., pp. 11-13]

Likewise, in explaining the effect of Jackson's mental impairment on her overall RFC, the ALJ noted that, which he gave great weight to the State agency consultants who adopted and gave great weight to Dr. Sahner's psychological consultative assessment, he concluded that Dr. Sahner's limitations would be adequately accommodated by the limitations he incorporated into the hypothetical question posed to the VE.

> [According to] Dr. Sahner[,] the claimant could understand, remember, and carry out instructions towards the performance of simple repetitive tasks that do not require more than a moderate level of mental manipulation or long delay between instruction and tasks with adequate attention toward simple repetitive instructions, "moderate" limitations in her ability to interact appropriately with fellow workers and supervisors in the workplaces, cognitively and emotionally. *I find Dr. Sahner's limitations are adequately accommodated by limitations from production rate quota work that is*

---

2 The ALJ found that Jackson had: mild restrictions regarding activities of daily living; mild difficulties in social functionin; moderate difficulties with regard to concentration, persistence or pace; and no episodes of decompensation of extended duration. Likewise, the ALJ found no evidence of inability to function outside the home.

*inherently more stressful that other unskilled work.* The claimant has had no mental health treatment other than medications and none has been recommended by the treating sources. She functions adequately in her day to day life. Greater limitations are not warranted.

[Tr., p. 16] Thus, contrary to Jackson's assertion, the ALJ did not adopt the opinion of the consultative examiner, Crystal Sahner, Psy.D. Instead, he fully explained the limited weight given to it.

### C. Substantial Evidence Supports The Commissioner's Decision.

During the administrative hearing, ALJ Letchworth posed hypothetical questions to the VE which included the residual functional limitations affecting Jackson. [Tr., pp. 50-52] In response, the VE testified that, while the claimant would be unable to perform his past work, there were jobs that she could perform. Testimony by a VE in response to a hypothetical may serve as substantial evidence in support of an ALJ's determination that there is work the claimant can perform, provided the hypothetical "accurately portrays [the claimant's] individual physical and mental impairments." *Howard*, 276 F.3d at 238 (internal quotation omitted). An ALJ must first "evaluat[e] the medical evidence and the claimant's testimony to form an 'assessment of [her] residual functional capacity.'" *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (quoting 20 C.F.R. § 416.920(a)(4)(iv)) (second alteration in original). Then, "[t]he vocational expert testifies on the basis of [the] claimant's 'residual functional capacity and . . . age, education, and work experience'" to determine whether the claimant can do her past relevant work or "'can make an adjustment

to other work.'" *Id.* (quoting 20 C.F.R. § 416.920(a)(4)(v)); 20 C.F.R. §§ 404.1560(b), 416.960(b).

Here, the VE's testimony in response to a hypothetical based on the claimant's RFC constitutes substantial evidence supporting the ALJ's finding that Jackson is not disabled as that term is defined under the relevant Social Security regulations.

**IV.**

Although Jackson suffers from some functional limitations, she has not established that her symptoms are severe enough to warrant supplemental security income. The ALJ adequately explained why he did not fully credit Jackson's testimony or her claims of disabling pain. Likewise, the ALJ's hypothetical question posed to the VE and upon which his ultimate conclusion is based contain all of the functional limitations he found affecting Jackson's ability to perform work. The question posed to the vocational expert and adopted by the ALJ accurately reflected Jackson's limitations based on the evidence in the record. Viewing the record as a whole, substantial evidence supports ALJ Letchworth's determination. Accordingly, it is hereby

**ORDERED** as follows:

(1) Plaintiff Carmela Renne Jackson's Motion for Summary Judgment [Record No. 10] is **DENIED**;

(2) Defendant Michael J. Astrue's Motion for Summary Judgment [Record No. 11] is **GRANTED**; and

(3)     The administrative decision will be **AFFIRMED** by separate judgment entered this date.

This 25th day of July, 2011.



Signed By:
*Danny C. Reeves* DCR
United States District Judge